IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION

| | | |
|---|---|---|
| HEALTHGUARD OF LANCASTER, INC., | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| MARK GARTENBERG; | : | No. 02-CV-2611 |
| STEVEN GARTENBERG; | : | |
| MARK TISCHLER; | : | (Michael M. Baylson, J.) |
| GREENFIELD SPORTS MEDICINE | : | |
| & REHAB, P.C.; | : | |
| PREMIER SPORTS MEDICINE | : | |
| & REHAB CENTER, P.C. and | : | |
| MAIN LINE MEDICAL SERVICES, INC. | : | |
| Defendants | : | |

## RICO CASE STATEMENT

Pursuant to the Court's Order and Opinion dated December 6, 2002, Plaintiff HealthGuard of Lancaster, Inc. submits the following RICO Case Statement:

**A.   As to each Defendant in each RICO count, state the alleged misconduct and basis of liability of each Defendant.**

1.   <u>Mark Gartenberg</u>: Plaintiff alleges that Defendant Mark Gartenberg, as an owner, officer, or one of the controlling persons of Main Line Medical ("MLM") and one of the individuals responsible for forming and operating Greenfield Sports Medicine & Rehab, P.C. ("Greenfield") and Premier Sports Medicine & Rehab Center, P.C. ("Premier"), formulated and executed (through MLM, Greenfield and Premier with respect to Plaintiff) a fraudulent scheme designed to collect payments on an ongoing basis from Plaintiff for false medical insurance claims. Specifically, Plaintiff alleges that Defendant Mark Gartenberg:

00277164.4

(1) caused Greenfield and Premier to enter into a management agreement with MLM pursuant to which all billing and all revenue of Greenfield and Premier flowed through and into MLM. MLM did all the billing for, and received all the receipts of, Greenfield and Premier, paid Greenfield's and Premier's employees, rent, and general overhead, and kept all remaining cash, which was controlled by Mark Gartenberg in whole or in part;

(2) directed MLM to develop and execute a telemarketing scheme, with the purpose of inducing only individuals with health insurance coverage to seek services at Greenfield and Premier by offering a free medical examination;

(3) thereafter, as a result of a free medical examination, directed a medical doctor under the control of Greenfield or Premier to order various tests or procedures on those individuals with health insurance (but not for those without health insurance);

(4) directed the employees of Greenfield and Premier to perform medically inappropriate (see entry "A" on the attached False Claims Chart) and medically unnecessary (see entry "B" on the False Claims Chart) services upon patients;

(5) directed the employees of Greenfield and Premier to document for billing purposes services that were never rendered (see entry "C"), services that were different and more costly than services actually rendered, as well as services that were not medically necessary or appropriate;

(6) directed the employees of Greenfield and Premier to submit false billing information and false supporting documentation related to each of the claims

    identified in the False Claims Chart via wire and/or U.S. mail to MLM for processing and eventual submission to Plaintiff;

(7) directed the employees of MLM to submit false medical insurance claims (identified with particularity in the False Claims Chart) via U.S. mail to Plaintiff for payment, knowing such claims to be fraudulent; and

(8) directed the employees of MLM to process payments received from Plaintiff based on each of the false medical insurance claims (identified with particularity in the False Claims Chart); and

(9) participated, in a leadership role, in the conduct of the affairs of MLM by regularly directing employees to market the services of Greenfield and Premier to individuals with health insurance, and then to submit and process false medical insurance claims based on services allegedly performed at Greenfield and Premier, in the manner described herein.

  Based on the misconduct described above, Defendant Mark Gartenberg is liable to Plaintiff under 18 U.S.C. § 1962(c) and § 1964. Mark Gartenberg participated in the conduct of MLM's affairs through related and repeated acts of mail fraud, i.e. the related and repeated submission of false medical insurance claims (identified with particularity in the False Claims Chart) via U.S. Mail to Plaintiff, which continued as to Plaintiff for a period of twenty-six months, and would have continued indefinitely if the fraudulent activity had not been discovered by Plaintiff. Because the related and repeated acts of mail fraud form a pattern of racketeering activity, Defendant Mark Gartenberg's participation in the conduct of the affairs of MLM through a pattern of racketeering activity is a violation of 18 U.S.C. § 1962(c). Defendant Mark

Gartenberg's violation of 18 U.S.C. § 1962(c) caused direct financial loss to Plaintiff (insofar as Plaintiff paid the false medical insurance claims), thus he is liable to Plaintiff under 18 U.S.C. § 1964.[1]

2.  <u>Steven Gartenberg</u>:  Plaintiff alleges that Defendant Steven Gartenberg, as an owner, officer, or one of the controlling persons of MLM and one of the individuals responsible for forming and operating Greenfield and Premier, formulated and executed (through MLM, Greenfield and Premier with respect to Plaintiff) a fraudulent scheme designed to collect payments on an ongoing basis from Plaintiff for false medical insurance claims.  Specifically, Plaintiff alleges that Defendant Steven Gartenberg:

(1) caused Greenfield and Premier to enter into a management agreement with MLM pursuant to which all billing and all revenue of Greenfield and Premier flowed through and into MLM.  MLM did all the billing for, and received all the receipts of, Greenfield and Premier, paid Greenfield's and Premier's employees, rent, and general overhead, and kept all remaining cash, which was controlled by Steven Gartenberg in whole or in part;

(2) directed MLM to develop and execute a telemarketing scheme, with the purpose of inducing only individuals with health insurance coverage to seek services at Greenfield and Premier by offering a free medical examination;

---

[1] Plaintiff's allegations of the Defendants' misconduct are based on an investigation performed by Plaintiff's employees that included audits of treatment and billing records at Greenfield and Premier, interviews with employees at both facilities, and an investigation of the role that each individual Defendant played in MLM and Greenfield/Premier, as well as the relationship between those entities.

(3) thereafter, as a result of a free medical examination, directed a medical doctor under the control of Greenfield or Premier to order various tests or procedures on those individuals with health insurance (but not for those without health insurance);

(4) directed the employees of Greenfield and Premier to perform medically inappropriate (see entry "A" on the attached False Claims Chart) and medically unnecessary (see entry "B" on the False Claims Chart) services upon patients;

(5) directed the employees of Greenfield and Premier to document for billing purposes services that were never rendered (see entry "C"), services that were different and more costly than services actually rendered, as well as services that were not medically necessary or appropriate;

(6) directed the employees of Greenfield and Premier to submit false billing information and false supporting documentation related to each of the claims identified in the False Claims Chart via wire and/or U.S. mail to MLM for processing and eventual submission to Plaintiff;

(7) directed the employees of MLM to submit false medical insurance claims (identified with particularity in the False Claims Chart) via U.S. mail to Plaintiff for payment, knowing such claims to be fraudulent; and

(8) directed the employees of MLM to process payments received from Plaintiff based on each of the false medical insurance claims (identified with particularity in the False Claims Chart); and

>   (9)   participated, in a leadership role, in the conduct of the affairs of MLM by regularly directing employees to market the services of Greenfield and Premier to individuals with health insurance, and then to submit and process false medical insurance claims based on services allegedly performed at Greenfield and Premier, in the manner described herein.

Based on the misconduct described above, Defendant Steven Gartenberg is liable to Plaintiff under 18 U.S.C. § 1962(c) and § 1964. Steven Gartenberg participated in the conduct of MLM's affairs through related and repeated acts of mail fraud, i.e. the related and repeated submission of false medical insurance claims (identified with particularity in the False Claims Chart) via U.S. Mail to Plaintiff, which continued as to Plaintiff for a period of twenty-six months, and would have continued indefinitely if the fraudulent activity had not been discovered by Plaintiff. Because the related and repeated acts of mail fraud form a pattern of racketeering activity, Defendant Steven Gartenberg's participation in the conduct of the affairs of MLM through a pattern of racketeering activity is a violation of 18 U.S.C. § 1962(c). Defendant Steven Gartenberg's violation of 18 U.S.C. § 1962(c) caused direct financial loss to Plaintiff (insofar as Plaintiff paid the false medical insurance claims), thus he is liable to Plaintiff under 18 U.S.C. § 1964.

>   3.   <u>Mark Tischler</u>: Plaintiff alleges that Defendant Mark Tischler, as an owner, officer, or one of the controlling persons of Main Line Medical ("MLM") and one of the individuals responsible for forming and operating Greenfield and Premier, as well as the Chief Executive Officer of Greenfield from July 21, 1997 through February 2001, formulated and executed (through MLM, Greenfield and Premier with respect to Plaintiff) a fraudulent scheme

designed to collect payments on an ongoing basis from Plaintiff for false medical insurance claims. Specifically, Plaintiff alleges that Defendant Mark Tischler:

(1) caused Greenfield and Premier to enter into a management agreement with MLM pursuant to which all billing and all revenue of Greenfield and Premier flowed through and into MLM. MLM did all the billing for, and received all the receipts of, Greenfield and Premier, paid Greenfield's and Premier's employees, rent, and general overhead, and kept all remaining cash, which was controlled by Mark Tischler in whole or in part;

(2) directed MLM to develop and execute a telemarketing scheme, with the purpose of inducing only individuals with health insurance coverage to seek services at Greenfield and Premier by offering a free medical examination;

(3) thereafter, as a result of a free medical examination, directed a medical doctor under the control of Greenfield or Premier to order various tests or procedures on those individuals with health insurance (but not for those without health insurance);

(4) directed the employees of Greenfield and Premier to perform medically inappropriate (see entry "A" on the attached False Claims Chart) and medically unnecessary (see entry "B" on the False Claims Chart) services upon patients;

(5) directed the employees of Greenfield and Premier to document for billing purposes services that were never rendered (see entry "C"), services that were different and more costly than services actually rendered, as well as services that were not medically necessary or appropriate;

(6) directed the employees of Greenfield and Premier to submit false billing information and false supporting documentation related to each of the claims identified in the False Claims Chart via wire and/or U.S. mail to MLM for processing and eventual submission to Plaintiff;

(7) directed the employees of MLM to submit false medical insurance claims (identified with particularity in the False Claims Chart) via U.S. mail to Plaintiff for payment, knowing such claims to be fraudulent; and

(8) directed the employees of MLM to process payments received from Plaintiff based on each of the false medical insurance claims (identified with particularity in the False Claims Chart); and

(9) participated, in a leadership role, in the conduct of the affairs of MLM by regularly directing employees to market the services of Greenfield and Premier to individuals with health insurance, and then to submit and process false medical insurance claims based on services allegedly performed at Greenfield and Premier, in the manner described herein.

Based on the misconduct described above, Defendant Mark Tischler is liable to Plaintiff under 18 U.S.C. § 1962(c) and § 1964. Mark Tischler participated in the conduct of MLM's affairs through related and repeated acts of mail fraud, i.e. the related and repeated submission of false medical insurance claims (identified with particularity in the False Claims Chart) via U.S. Mail to Plaintiff, which continued as to Plaintiff for a period of twenty-six months, and would have continued indefinitely if the fraudulent activity had not been discovered by Plaintiff. Because the related and repeated acts of mail fraud form a pattern of racketeering activity,

Defendant Mark Tischler's participation in the conduct of the affairs of MLM through a pattern of racketeering activity is a violation of 18 U.S.C. § 1962(c). Defendant Mark Tischler's violation of 18 U.S.C. § 1962(c) caused direct financial loss to Plaintiff (insofar as Plaintiff paid the false medical insurance claims), thus he is liable to Plaintiff under 18 U.S.C. § 1964.

4. <u>Greenfield Sports Medicine & Rehab, P.C.</u>: Plaintiff alleges that Defendant Greenfield, through its owners, officers and employees, generated false medical insurance claims (identified with particularity in the False Claims Chart) and submitted those claims via wire and/or U.S. mail to MLM for processing, with the knowledge that MLM would submit the claims via wire or U.S. mail to Plaintiff for payment.

Based on the misconduct described above, Defendant Greenfield is liable to Plaintiff under 18 U.S.C. § 1962(c) and § 1964.

5. <u>Premier Sports Medicine & Rehab Center, P.C.</u>: Plaintiff alleges that Defendant Premier, through its owners, officers and employees, generated false medical insurance claims (identified with particularity in the False Claims Chart) and submitted those claims via wire and/or U.S. mail to MLM for processing, with the knowledge that MLM would submit the claims via wire or U.S. mail to Plaintiff for payment.

Based on the misconduct described above, Defendant Premier is liable to Plaintiff under 18 U.S.C. § 1962(c) and § 1964.

**B.   As to the racketeering activity alleged under each RICO count, include the following:**

    **(i)   List each predicate act which Plaintiff alleges constitutes the RICO violation, including such specifics as names, dates, and types of communications or acts, and in doing so, Plaintiff may incorporate Exhibit A to the Complaint.**

Plaintiff alleges that Defendants directed MLM employees to send medical insurance claims that contained material false statements through the U.S. mail to Plaintiff. Plaintiff further alleges that the submission of each and every false medical insurance claim (identified with particularity in Exhibit A, the "False Claims Chart") to Plaintiff, at the direction of the Defendants via U.S. Mail, was a predicate act of mail fraud. Plaintiff believes, and therefore avers, that the majority of false medical insurance claims for which Defendants sought payment from Plaintiff were transmitted to Plaintiff through the U.S. Mail, and that the remaining false medical insurance claims were transmitted via facsimile wire. Further discovery will be necessary to determine the precise manner in which each particular medical insurance claim at issue was delivered from MLM to Plaintiff, however Plaintiff alleges on information and belief that the majority of the claims at issue were sent through the U.S. Mail.

 **(ii) Describe how each predicate act is fraudulent and/or part of a pattern of racketeering activity:**

Knowing that the medical insurance claims identified in the False Claims Chart contained materially false and misleading statements, Defendants nonetheless caused the claims to be submitted to Plaintiff for payment. Thus, each and every predicate act of causing a medical insurance claim that included false statements to be sent through the U.S. mail was fraudulent. Because each predicate act of mail fraud (i.e. the submission of each false medical insurance claim via U.S. Mail) was performed pursuant to consistent and repeated practices and procedures over at least a twenty-six month period, Plaintiff alleges that each predicate act was both fraudulent and part of an ongoing pattern of racketeering activity, which would have continued

indefinitely as part of Defendants' regular way of doing business, if Plaintiff had not discovered the fraud and advised Defendants that it would not pay any future claims.

  **(iii) State how the alleged predicate acts relate to each other as part of a common plan.**

Each predicate act (i.e. the submission of each false medical insurance claim via U.S. Mail) was committed with the same purpose (to collect payment from Plaintiff), the same result (the actual collection of payments from Plaintiff for the benefit of Defendants Mark Gartenberg, Steven Gartenberg and Mark Tischler), the same participants (the individual Defendants, as well as Greenfield and Premier), the same victim (Plaintiff), and the same method of commission (submitting medical insurance claims for testing and treatment procedures that were based on standardized protocols that were not related to, or appropriate for, an individual patient's medical needs), which methods constitute MLM's "regular way of doing business." Each predicate act is related to the others insofar as each one was the result of a common plan, consistently applied using standard practices, and producing a consistent result, i.e. the submission to and payment by Plaintiff of false medical insurance claims. Plaintiff is not relying on isolated bad acts in an effort to create a "pattern" where none exists. To the contrary, Plaintiff believes, and therefore avers, that each of the predicate acts is closely related and, together, form a continuous pattern of fraudulent acts.

**C. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

  **(i) The names of the individuals, partnerships, corporations, associations, or other legal entities that allegedly constitute the enterprise:**

Main Line Medical Services, Inc. ("MLM"), a Pennsylvania Corporation with its principal place of business as 25 Bala Avenue, Suite 200, Bala Cynwyd, Pennsylvania, is the alleged enterprise.

**(ii)     The structure, purpose, function, and course of conduct of the enterprise:**

MLM is a corporation formed and controlled by the individual Defendants solely for the purpose of coordinating the various activities that comprise their elaborate scheme to defraud Plaintiff and other medical insurance providers. MLM is organized under the laws of the Commonwealth of Pennsylvania. On information and belief, MLM is governed by a Board of Directors and the day-to-day operations are supervised by corporate officers, including the individual Defendants. By generating a large volume of patients through a telemarketing scheme and centrally coordinating the billing and insurance claim activities for a large number of medical and chiropractic practices in the region (all of which were created and operated, directly or indirectly, under the direction of the individual Defendants in a fashion similar to that which they used in forming and operating Greenfield and Premier), MLM served as the vehicle by which Defendants centrally coordinated a large-scale pattern of ongoing fraudulent activity, i.e. the submission of consistently generated false medical insurance claims to Plaintiff and other insurers. As part of MLM's regular way of doing business, it received all payments that were billed by it on behalf of the contracting medical or chiropractic practice (e.g. Greenfield and Premier), paid the direct expenses of the practices, and retained the cash left over, which was then controlled by and distributed to Defendants Mark Gartenberg, Steven Gartenberg and Mark Tischler.

> **(iii)  Whether any defendants are employees, officers, or directors of the alleged enterprise:**

On information and belief, Defendants Mark Gartenberg, Steven Gartenberg and Mark Tischler are owners and/or officers of MLM who direct and supervise the day-to-day operations of the enterprise, including the processing and submission of false medical insurance claims to Plaintiff.

> **(iv)  Whether any defendants are associated with the enterprise:**

Plaintiff alleges that all three individual defendants, as well as Greenfield and Premier, are associated with the enterprise. The individual defendants are associate with MLM by virtue of their ownership of the corporation and their involvement in directing its operation. Defendants Greenfield and Premier are associated with MLM by virtue of the contract between Greenfield/Premier and MLM to provide various medical management services, including billing and insurance claim handling services, for the medical practices, and authorizing MLM to receive and retain the revenue generated by the Greenfield/Premier billings, after paying employee and other overhead costs of Greenfield/Premier.

> **(v)  Whether Plaintiff is alleging that the Defendants are individuals or entities separate from the alleged enterprise, that the Defendants are the enterprise itself, or members of the enterprise:**

Plaintiff alleges that the RICO Defendants are three individuals (Mark Gartenberg, Steve Gartenberg and Mark Tischler) and two corporate entities (Greenfield and Premier) separate and distinct from the alleged enterprise, MLM. Plaintiff also alleges that the Defendants, although separate and distinct from MLM, are nonetheless associated with and involved in conducting the affairs of MLM.

**D.    Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity.**

MLM, the enterprise, provides services to medical and chiropractic practices that are directly or indirectly controlled by the individual defendants or their relatives. Among the services provided by MLM is the gathering and processing of patient billing information, the subsequent submission of that information to insurance providers in the form of medical insurance claims, and the eventual processing of payments received on the basis of those claims. MLM uses the receipts from the claims payments to pay direct overhead costs of Greenfield and Premier, and retains the balance of revenue for itself for use by the individual Defendants. In so doing, MLM was directly involved in the preparation and submission (via U.S. Mail) of the false medical insurance claims that form the predicate acts of mail fraud and the corresponding pattern of racketeering activity.

**E.    Describe how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The racketeering activity at issue involved the submission of false medical insurance claims. Upon information and belief, MLM also provides legitimate medical management services for Greenfield and Premier, including payment of employee salaries, rent, utilities, and supplies. Furthermore, some of the medical insurance claims submitted by MLM to insurance providers other than Plaintiff may be legitimate claims. Although submission of healthcare claims is part of MLM's usual and daily activities, the racketeering activities carried out by MLM differ from the usual activities of MLM in that the racketeering activities involved submission of insurance claims based on false information.

**F.     Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

Plaintiff alleges that it was injured by virtue of its payment of at least $344,859 in false medical insurance claims. The false medical insurance claims were paid because they were submitted by MLM, at the direction of Defendants, via U.S. Mail. Defendants violated the RICO statute by conducting the affairs of MLM through the repeated use of the U.S. Mail to submit fraudulent claims, or in other words, through a pattern of mail fraud. Thus, Plaintiff's alleged injury (payment of $344,859 in false claims) was the direct result of the RICO violation (the pattern of submitting fraudulent claims via U.S. mail).

**G.     Describe the effect of the enterprise on interstate or foreign commerce**.

MLM, the alleged enterprise, is a Pennsylvania corporation that conducts business in both Pennsylvania and New Jersey. Specifically, Plaintiff alleges that MLM provides services to, among others, David Wurtzel, MD, in Ewing, New Jersey. The enterprise is, therefore, directly engaged in interstate commerce.

**H.     If the complaint alleged a violation of 18 U.S.C. § 1962(c), state:**

**(i)     Who is employed by or associated with the enterprise:**

Defendants Mark Gartenberg, Steven Gartenberg and Mark Tischler are all associated with, and directly involved in the operation of, MLM, the enterprise. Further discovery will be required to determine the title each individual defendant holds with respect to MLM. Defendants Greenfield and Premier were associated with MLM by virtue of the contract between the entities to provide insurance claim processing services, as well as other administrative services.

**(ii)    Whether the same entity is both the liable "person" and the "enterprise" under 18 U.S.C. § 1962(c):**

The liable "persons" are Defendants Mark Gartenberg, Steven Gartenberg, Mark Tischler, Greenfield and Premier. The alleged "enterprise" is MLM. The liable "person" and the "enterprise" are not, therefore, the same entity.

I.   **If the complaint alleges a violation of 18U.S.C. § 1962(d), describe the alleged conspiracy.**

Plaintiff alleges that the individual Defendants conspired to engage in the pattern of racketeering activity that caused direct injury to Plaintiff. The individual Defendants are closely associated with one another by virtue of their mutual business activities and their family relationships. On information and belief, the individual defendants agreed with each other to form the fraudulent scheme at issue, agreed with each other to carry out the fraudulent scheme by submitting false medical insurance claims to Plaintiff via U.S. Mail, and worked closely with each other to execute the scheme by directing the employees of MLM to submit the false medical insurance claims (identified with particularity in the False Claims Chart) via U.S. Mail. Given the complexity of the fraudulent scheme, and the fact that it was carried out by repeated application of consistent procedures developed by the individual Defendants, Plaintiff alleges that the individual Defendants conspired with one another to engage in the predicate acts of mail fraud and, by virtue thereof, to violate the RICO statute.

J.   **Describe the alleged injury to business or property.**

Plaintiff paid at least $344,859 in false medical insurance claims.

K.   **Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

See item "E" above.

L.   **Provide any additional information that you believe would be helpful in processing your RICO claim.**

In its Opinion dated December 6, 2002, at page 5, the Court describes specific deficiencies in Plaintiff's Complaint. To the extent that those deficiencies have not been fully addressed by the information included thus far in the "RICO Case Statement," Plaintiff offers the following supplemental explanation of its claim:

**(i)** **"Plaintiff vaguely refers to acts of mail fraud and wire fraud, but it fails to specify these alleged acts, or to explain how each of these alleged acts furthered the scheme to defraud or was incident to an essential part of that scheme":**

The alleged acts of mail and wire fraud are the following: the Defendants repeatedly transmitted, or caused MLM employees to transmit, through the U.S. Mail, medical insurance claims (identified with particularity in the False Claims Chart) that they knew contained material false statements. Each such act of knowingly using (or knowingly causing MLM employees to use) the U.S. Mail to transmit medical insurance claims that contained false statements *directly* furthered the fraudulent scheme to collect payments from Plaintiff based on the false medical insurance claims. The false claims at issue have been identified with particularity in the False Claims Chart attached to the Amended Complaint. Discovery will be necessary to determine the date and precise circumstances surrounding the mailing of each identified claim. The repeated acts of mail fraud were an integral part of, and directly furthered the objectives of, Defendants' scheme to defraud Plaintiff insofar as the submission of the claims via the U.S. Mail led directly to the payments by Plaintiff.

**(ii)** **"The Complaint does not contain sufficient allegations as to enterprise, relatedness, or continuity":**

**"Enterprise"** - Plaintiff alleges that MLM, a corporate entity, is an "enterprise" within the meaning of 18 U.S.C. § 1961(4). MLM is not named as a defendant in Plaintiff's RICO Count (Count I), thus the requirement that the defendant and the alleged "enterprise" be

separate entities is met. MLM is a corporation and thus falls within the statutory definition of an "enterprise." Defendants, who were closely associated with MLM, conducted the affairs of MLM through a pattern of mail fraud (i.e. the repeated submission of false medical insurance claims via the U.S. mail), which, but for its discovery by Plaintiff, would have likely continued indefinitely, in violation of 18 U.S.C. § 1962(c).

**"Relatedness"** - Plaintiff alleges that the predicate acts of mail fraud were closely related, based on the fact that each act of mail fraud was committed with the same purpose (to collect payment from Plaintiff), the same result (the actual collection of payments from Plaintiff), the same participants (the individual Defendants, as well as Greenfield and Premier), the same victim (Plaintiff), and the same method of commission, which constitutes MLM's "regular way of doing business." The false information included in the medical insurance claims at issue (identified with particularity in the False Claims Chart) was also generated using consistent practices, e.g., Defendants' use of standardized testing and treatment protocols that had no relationship whatsoever to the medical needs of the individual patient. "Churning out" insurance claims for the same testing and treatment procedures, when in fact those procedures were not necessary, not appropriate, never performed or not performed correctly, is a paradigmatic "pattern" of related bad acts.

**"Continuity"** - Plaintiff alleges that Defendants' repeated submission of false medical insurance claims formed a pattern of continuous racketeering activity. "Continuity" is established by Plaintiff's allegations that the Defendants' fraudulent scheme posed, and may continue to pose, a threat of continued criminal activity. Given that the Defendant's conduct of the affairs of MLM involved, and may continue to involve, committing acts of mail fraud as a *regular way of doing business*, with no natural ending point, it is likely that the Defendant's

pattern would have continued indefinitely with respect to Plaintiff, and that Defendants would have continued to reap the financial rewards generated by submitting false medical insurance claims to Plaintiff, unless and until their misdeeds were discovered. Plaintiff believes that Defendants' fraudulent acts, through MLM and the medical professional corporations other than Greenfield and Premier that they control, both predated and postdate Defendants' fraudulent acts with respect to Plaintiff. These allegations satisfy the test for the "open-ended" form of RICO continuity, as described by the United States Supreme Court in H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241-42 (1989). See also, Tabas v. Tabas, 47 F.3d 1280, 1292-93 (3d Cir. 1995) (*en banc*).

## CONCLUSION

Plaintiff hereby incorporates this "RICO Case Statement" into its Amended Complaint, pursuant to this Court's Order and Opinion dated December 6, 2002.

Respectfully submitted,

HARTMAN UNDERHILL & BRUBAKER LLP

Date: _____

By: _____
Robert M. Frankhouser, Attorney I.D. 29998
Andrew F. Lucarelli, Attorney I.D. 15421
Virginia A. Clay, Attorney I.D. 84463

221 E. Chestnut Street
Lancaster, PA 17602
(717) 299-7254