IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEALTHGUARD OF LANCASTER, INC., <br><br> Plaintiff <br><br> v. <br><br> MARK GARTENBERG; STEVEN GARTENBERG; MARK TISCHLER; GREENFIELD SPORTS MEDICINE & REHAB, P.C.; PREMIER SPORTS MEDICINE & REHAB CENTER, P.C.; and MAIN LINE MEDICAL SERVICES, INC., <br><br> Defendants. | CIVIL ACTION NO. 02-2611 |

**DEFENDANTS' MOTION IN LIMINE TO LIMIT
PLAINTIFF'S DAMAGES TESTIMONY AT TRIAL**

The object of this Motion is to assure that Plaintiff be limited in its damages evidence at trial to those items which it has disclosed in discovery. Defendants are not requesting preclusion of any recently disclosed items of damage, inasmuch as there have been no such disclosures. On the contrary, Plaintiff has never supplemented its responses to three sets of discovery demanding itemization of the damages which it intends to seek at trial. Nor in its Pre-Trial Memorandum has Plaintiff offered any detail beyond the statement that "many" charges have been fraudulent. Thus, Defendants hereby seek to confine Plaintiff's proofs to those items which have been disclosed. This motion is therefore brought under Rule 37(c)(1) to remedy Plaintiff's failure to disclose information as required by Rule 26(a) and Rule 26(e)(1) F. R. Civ. P.

A.     **Discovery History**

The Amended Complaint, like its predecessor, claims damages in "an undetermined amount in excess of $344,859" *(Amended Cpl. ¶ 38)* resulting from "hundreds of false claims" *(Ibid. ¶ 26)* submitted by Defendants.  According to the Amended Complaint, those false claims fell into three categories:  medically inappropriate services, unnecessary services, and services never rendered *(Ibid. ¶ 21(j), (k))*.

Plaintiff's RICO Case Statement echoes both the scope and generality of the claim.  In response to the Court's command to "describe the alleged injury to business or property" *(Memorandum and Order of December 6, 2000, p. 7)* Plaintiff contented itself with an expansive reiteration that it "paid at least $344,859 in false medical claims." *(RICO Case Statement, p. 16.)*

In both the Amended Complaint and RICO Case Statement, Plaintiff makes repeated reference to an attached "False Claims Chart" – a 62-page listing of over 3,500 treatments and procedures.  As to specifics, however, Plaintiff is a bit more modest, identifying from the chart only <u>three</u> procedures for which it claims the billing was improper.  Specifically, Plaintiff identified a September 13, 1999 charge in the amount of $42.28 which it claimed to be "medically unnecessary"; a January 7, 2000 charge in the amount of $13.21 for a service which it contends was never rendered; and a May 22, 2000 charge for $285.60 which is claimed to be "medically inappropriate." *(RICO Case Statement, p. 2 4A.1(4)(5).)*[1]

---

[1]     The total charges on the "False Claims Chart" amount to $188,804.56.  The relationship of that number to the demand for $344,859 remains unexplained.  Moreover, since only three of the items, totaling $341.09, are challenged, the chart might be better referred to as the "Uncontested Claims Chart."

Faced with pleadings long on generality and short on detail, Defendants sought discovery of exactly what it is that Plaintiff is claiming. In their first set of Interrogatories, Defendant asked:

> 1. For each and every claim you have listed on the "False Claims Chart," (attached to the Complaint as Exhibit A), please specify whether you contend that such claim was (a) medically necessary, (b) medically inappropriate, (c) performed by unqualified individuals, and/or (d) never performed, and state the factual basis for your contention.

In response, Plaintiff provided handwritten notes of unidentified authorship taken during what is described as an external audit of Greenfield's billings. A three-page "audit summary," apparently compiled from the external audit notes, was also provided. *(The audit summary is attached hereto as Exhibit A.)* The audit summary chart indicates billings of $267,106, of which $17,312.70 are disparaged on the alleged ground of improper documentation. The production provides no specifics as to the Amended Complaint's allegations of unnecessary, inappropriate, or unperformed services, and in no way relates to the "False Claims Chart." Nor is a claim of "improper documentation" supportive of Plaintiff's generalized claims of racketeering and fraud.

Faced with this abiding mystery as to which services were supposedly unnecessary, inappropriate, or not performed, Defendants approached the problem from the reverse angle by providing records of patient services and billings, together with Requests for Admission that all of these services <u>were</u> necessary, appropriate, and in fact, performed. Defendants requested the following admissions:

> 1. Admit that each claim in each one of the bills attached hereto as Exhibit A was for medically necessary services.

3

      2.      If you deny the above request for admission, please identify each and every claim which you contend was for medically unnecessary services and state the facts on which you base your contention.

      3.      Admit that each claim in each one of the bills attached hereto as Exhibit A was for medically appropriate services.

      4.      If you deny the above request for admission, please identify each and every claim which you contend was for medically inappropriate services and state the facts on which you base your contention.

      5.      Admit that each claim in each one of the bills attached hereto as Exhibit A was for services performed by qualified professionals.

      6.      If you deny the above request for admission, please identify each and every claim which you contend was for services performed by unqualified persons and state the facts on which you base your contention.

      7.      Admit that each claim in each one of the bills attached hereto as Exhibit A was for services that were in fact performed.

      8.      If you deny the above request for admission, please identify each and every claim which you contend was for services not performed and state the facts on which you base your contention.

These requests adduced the following response from Plaintiff:

      1 - 8.      After reasonable investigation consisting of a substantial effort to match the invoices, attached to the Requests as Exhibit A, with the information in the possession of the Plaintiff, the Plaintiff is unable to admit or deny paragraphs 1-8 as the information contained in the itemized statements attached to Defendants' First Set of Request for Admissions and Interrogatories as Exhibit A does not provide sufficient information to identify the individuals who received treatment and on whose behalf the claims were submitted.  For the Plaintiff to respond appropriately, each request for admission, and the corresponding claim document, must include a personal patient identifier and the corresponding patient records in the possession of

the Defendants. The Plaintiff will supplement these responses upon production of the necessary information.[2]

Thus, by the end of January 2003, Defendants remained unapprised of any specifics as to the allegations of the Amended Complaint beyond the three items, totaling $314.09, identified on the "False Claims Chart." At this point, Defendants decided to make another go of it by propounding a second set of interrogatories. Taking care to avoid any ambiguity, Defendants asked:

> 13. Identify by patient name (and any other identifier), date of treatment, type of service, and amount paid, every procedure rendered by any of the defendants which you claim to be medically inappropriate. (As alleged in your RICO Case Statements, Part A, 1(4))
>
> 14. Identify by patient name (and any other identifier), date of treatment, type of service, and amount paid, every procedure rendered by any of the defendants which you claim to be medically unnecessary. (As alleged in your RICO Case Statements, Part A, 1(4))
>
> 15. Identify by patient name (and any other identifier), date of treatment, type of service, and amount paid, every bill submitted by or on behalf of Greenfield or Premier which you claim to be for services which were never performed. (As alleged in your RICO Case Statements, Part A, 1(5))
>
> 16. Identify by patient name (and any other identifier), date of treatment, type of service, and amount paid, every bill submitted by or on behalf of Greenfield or Premier which you claim to be for services that were different from services actually rendered. (As alleged in your RICO Case Statements, Part A, 1(5))

To each of these questions, Plaintiff responded identically:

> 13-16. Plaintiff has identified an example of a procedure rendered by the Defendants which was medically inappropriate on the False Claims Chart attached

---

[2] Defendants thereafter produced records of every HealthGuard customer that they treated. Plaintiff never provided further response to the Requests for Admission. It is therefore also appropriate that the Requests be deemed admitted pursuant to Rule 36(a) F. R. Civ. P.

as Exhibit A to Plaintiff's Amended Complaint. By way of further response, Plaintiff's investigation and discovery into each procedure identified in patient records recently produced by several defendants is ongoing. Plaintiff will supplement this response as additional information become available.

For each of the alleged categories of fraudulent mis-billing, Plaintiff simply refers back to the one item on the "False Claims Chart" previously identified as medically unnecessary. Thus, at this point, Plaintiff has reduced its specific complaint from $314.09 to $42.28. Apparently recognizing that $42.28 is a long way from $344,859, Plaintiff proclaimed – nine months after filings its Complaint – that the investigation was "ongoing" and supplemental responses would be provided when the investigation was complete.

No additional responses or supplementation have ever been provided.

In its recently filed Pre-Trial Memorandum, Plaintiff retreats somewhat in its sweeping general claim, but provides no further hint of specific allegations of fraud. Generally, Plaintiff states that it has "paid" $344,859 to Greenfield and Premier (not indicating what portion of those payments are disputed) and that "many of the insurance claims were fraudulent" *(Pl's Pre-Trial Memo, p. 3)*. As to specifics, Plaintiff again attaches the 62-page "False Claims Chart" and again identifies three actual disputed charges totaling $314.09.

The case entered the trial pool on November 3, 2003.

**B.      Argument**

Under the Federal Rules of Civil Procedure, a defendant is entitled, without even asking, to specific details of claim for damages. Rule 26(a)(1)(C) requires plaintiffs to make initial disclosure of:

>    (C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary materials, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and . . .

In the absence of any Initial Disclosures, Defendants requested that Plaintiff explain which of the items on its vaunted "False Claims Chart" it was contesting and upon what grounds. Plaintiff provided no explanation of any of these items, but instead provided handwritten notes and a summary chart complaining of $17,312.70 of charges as to which there was "improper documentation" – a damage theory not included in either the Amended Complaint or RICO Case Statement. (Those pleadings generally allege fraud, unperformed services, unnecessary services, but provide no detail or compilation.)

When Defendants requested admissions that specific charges were proper, Plaintiff stated that it was impossible to admit or deny without all of Defendants' records. Records were provided by Defendants; no admissions or denials were provided by Plaintiff.

Finally, Defendants demanded to know which charges Plaintiff contends were unnecessary, inappropriate, or never performed. Plaintiff responded with limited specifics, totaling $314.09, and promised to supplement its response when its investigation was completed. (This occurring nine months after the Complaint was filed.) No supplementation has been made.

Local Rule of Civil Procedure 16.1(d)(2)(b)(3) also requires that a plaintiff's pre-trial memorandum include a statement and description of damages sought. Plaintiff merely states that it has "paid" $344,859 to Defendants *(Pl. Pre-Trial Memo, p. 4)* and that "many of the insurance

claims were false." *(Pl. Pre-Trial Memo, p. 3.)* In other words, something between zero and $344,859 is disputed, but how much and which charges remain undisclosed.

A party's right to know the specifics of a damage claim against it is a central object of the discovery rules as consistently upheld by the courts. <u>Ware v. Rodale Press, Inc.</u>, *322 F. 2d 218, 224 (3d Cir. 2003) (". . . as plaintiff in this matter, [plaintiff] bore the responsibility for providing a damages calculation.")*.

Under the literal reading of Rule 37(c)(1), a party is simply precluded from introducing evidence not included in its Rule 26(a) disclosures. Similarly, a party who fails to supplement interrogatory answers as required by Rule 26(e) is simply limited by the responses actually given. Notwithstanding, the mechanical wording of the rule, this Circuit has held, as to Rule 26 violations, that more than a literal violation is required in order to justify preclusion. <u>In re Paoli Yard PCB Litig.</u>, *37 F. 3d 717, 791-793 (3d Cir. 1994)*.

Where a party makes last-minute pre-trial disclosures in literal violation of Rule 26(a) or (e), the courts consider four factors: (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation. <u>Nicholas v. Penn State Univ.</u>, *227 F. 3d 133 (3d Cir. 2000)*; <u>Meyers v. Pennypack Woods Homeownership Ass'n.</u>, *559 F. 2d 894, 905 (3d Cir. 1977)*.

In <u>Nicholas</u>, *supra.*, the appellate court affirmed preclusion where plaintiff failed to provide certain damages information until one month prior to trial. An even more extreme sanction of

preclusion of all damages evidence – the practical equivalent of dismissal – was affirmed in *Ware v. Rodale, supra.*, where after repeated requests and a previous court order, plaintiff failed to provide any damages calculation until the eve of trial. The Court rejected plaintiff's argument that defendant could have pieced together the damages theory from a simple contractual formula and emphasized that it is the plaintiff that is required to provide reasonably precise explication of damages, as well as an identification of the evidence supporting the claim. *322 F. 3d at 223*.

Similarly, the courts do not lightly excuse imprecision as to damages in pre-trial memoranda. In *Scarborough v. Eubank*, 747 F. 2d 871 (3d Cir. 1984) the plaintiff presented a particularly opaque explanation of damages in its memorandum, leading the trial court to dismiss the case. The Court of Appeals reversed the dismissal, noting that defendant had never made any discovery efforts, and suggested that preclusion was a more appropriate sanction.

Though not dealing with the issue of damages, this Court has recently set forth an exhaustive study of this Circuit's preclusion principles in *Astrazeneca AB, et al. v. Mutual Pharmaceutical Co., Inc.* 2003 WL 21982065 (Aug. 21, 2003) in which a new theory of defense was first disclosed in response to a summary judgment motion. The Court recognized that there was no bad faith nor even any violation of any specific discovery order, but ordered preclusion, noting the unfairness of surprise to the plaintiff caused by defendant's failure to promptly complete its own investigation.

It is respectfully suggested that no matter how helpful these citations may be to the Defendants, none are really on point since Plaintiff has yet to present anything which the Court can

specifically preclude.[3]  In all of the cited cases, a party has made a last-minute, pre-trial disclosure of proposed evidence and the opponent has objected.  Here, there has been no disclosure even at this late date.  Even in its Pre-Trial Memorandum, Plaintiff refers only to "many" fraudulent claims, yet still specifies only the three items identified on the "False Claims Chart."

If Plaintiff had now presented an exhaustive itemization of every charge that it now considered inappropriate, unnecessary, or unperformed, Defendants could effectively argue for preclusion under the *Meyers* test.  Defendants would be utterly surprised long after the close of discovery and upon the eve of trial; Defendants would have no effective method of marshaling a last-minute refutation on a charge-by-charge basis (find the patient? see if they remember the treatment?); the actual trial would be a disorganized, shoot-from-the-hip affair.  The only missing factor is "bad faith": Defendants do not argue that Plaintiff has intentionally hidden the ball, rather the argument is that Plaintiff has not yet found a ball.

Most significantly, due to Plaintiff's dereliction, Defendants cannot even make a *Meyers* analysis since Plaintiff has never shown its hand and has yet to state what its damages case consists of.  Months ago in response to repeated pleas for specifics, Plaintiff recognized that its damages case was unsettled and would require additional investigation.  It provided limited information and promised more when its investigation was completed.  Whether any investigation was performed

---

[3]    The one exception would be the listing of Dr. Shuymanski as a damages expert, who will "render opinions as to claims submitted to and paid by HealthGuard." *(Pl.'s Pre-Trial Memo, p. 6.)* Dr. Shuymanski's reports *(attached hereto as Exhibit B)* make absolutely no reference to any claim submitted or paid and specify no items or amounts of payment which are disputed.

remains unknown; whether it produced any claims remains a mystery. Absent a limiting order, the Defendants' and the Court's first and only indication of any damages compilation will occur at trial.

**C.    Conclusion**

It is respectfully urged that an Order be issued limiting Plaintiff's damage evidence at trial to those items on the "False Claims Chart" which have been identified as inappropriate, unnecessary, or never performed. Consistent therewith, Dr. Shuymanski should be precluded from rendering any opinions beyond what is contained in her reports and specifically precluded from testifying as to the propriety of any specific charge or payment.

                        Respectfully submitted,

BY: _____
JOHN W. MORRIS
ATTORNEY AT LAW
1525 Locust Street, 17th Floor
Philadelphia, PA 19102
215-772-2290
Attorney for Defendants Mark Tischler; Greenfield Sports Medicine & Rehab, P.C.; and Premier Sports Medicine & Rehab Center, P.C.

**OBERMAYER REBMANN MAXWELL & HIPPEL, LLP**

BY: _____
RICHARD P. LIMBURG
One Penn Center, 19th Floor
1617 JFK Boulevard
Philadelphia, PA 19103-1895
215-665-3074
Attorneys for Mark Gartenberg, Steven Gartenberg, and Main Line Medical Services, Inc.

Date:   October 30, 2003